Russell vs. Slaton.

---

WILLIAM J. RUSSELL, plaintiff in error. vs. USIBIOUS SLATON, defendant in error.

[1.] The Court is not bound to grant a motion, made in the midst of the trial, to require the Sheriff to execute a deed in pursuance of a sale by a former Sheriff, that took place more than twenty years before; and took place under a *fi. fa.* entered satisfied, " all but 18¾ cents;" the "all but 18¾ cents" being, by interlineation, and in a different ink.

[2.] A judgment binds only the parties and their privies. Remark as to *Dickerson vs. Powell,* 21 *Ga.*

[3.] When a man who has been holding land, without a title to it, voluntarily abandons it, the presumption is, that he has not been holding it adversely, but in subordination to the title of the true owner ; and, therefore, he can not insist upon such possession, to make out title in him, under th statute of limitation.

Ejectment, from Fayette county. Tried before Judge BULL, at September Term, 1857.

This was an action of ejectment brought by John Doe, upon the several demises of James McCarcel, W. B. Lambeth, Drury May, Joseph Lambeth, Jeptha V. May and Usibious Slaton, against Richard Roe, casual ejector, and William J. Russell tenant in possession, for lot of land No. 120, in the 7th district of Fayette county, containing 202½ acres.

Plaintiff offered and read in evidence the original grant from the State to James McCarcel, produced by defendant under notice, for the lot in dispute; proved the *locus*, the value of the mesne profits, and closed.

Defendant offered a Justice Court *fi. fa.* against James McCarcel and Sheriff's deed, under that fi. fa., made to John T. Davis. Plaintiff objected to their introduction, because the land was sold by the Sheriff before the grant issued to the drawer. The objection was sustained by the Court, and the *fi. fa.* and deed *admitted as color of title only.*

The defendant then moved the Court for an order requiring the present Sheriff to execute titles to the land in controversy to John T. Davis, who it appeared was the purchaser of said land when sold subsequently by the Sheriff, *after the grant issued;* and proposed, in support of this motion, to prove by the Sheriff in office at the time the land was sold, that the sale was fair and *bona fide*, and that no deed had ever been executed by him to Davis, under the last sale.

The Court refused the motion, on the ground that more than 20 years had elasped since the sale; and because there was a palpable alteration, with different ink, in the Sheriff's return of 6th October, 1835, and interlineation of the words " all but 18¾ cents;" that is, satisfied all but 18¾ cents, and that the Court would not stop in the midst of a trial to have titles executed.

Defendant then proved that Davis went into posession of said land soon after the sale in 1835, and continued in possession until the last of the year 1844, during which time he used wood and timber on the place, and exercised acts of

ownership over it; that he owned and lived on an adjoining lot.

Defendant then read in evidence a Sheriff's deed to said lot made under and by virtue of a sale thereof as the property of Davis. This deed was made in 1854 to Russell under a *fi. fa.* in favor of one Jones against Davis and others.

Plaintiff read in evidence a deed from the Sheriff, by virtue of a sale made under a *fi. fa.* against Davis, to William B. Lambeth and Drury May, for the land in dispute—sale made in 1839.

Defendant then proved that John T. Davis, about the time of the last sale, refunded to Jeptha Landrum one hundred dollars, which Landrum had advanced on the land which he bid off as a friend, that Landrum received the money; also proved that the land was worth some eight or nine hundred dollars, and that it sold for something less than one hundred dollars.

Defendant next proved by Jeptha Landrum that he bid off said land at the request and as the friend of Davis; that Clement paid him the money for Davis, which he had paid to the Sheriff; that sometime after the sale, perhaps in 1840, Davis, Drury May, and William B. Lambeth, came to him, and Davis requested him to transfer his bid to them; that May and Lambeth had agreed to advance Davis some five or six hundred dollars and for which, as an indemnity, they they were to take and hold the Sheriff's deed to said lot, in addition to a deed from Davis to lot No. 105.. That he did not know whether the parties advanced the money or not, they went off to Col. Huie's office to close the business; that he did transfer his bid to them. In 1844 Davis agreed that the titles should vest absolutely in May and Lambeth upon their giving up to Davis two interest notes for about $75 each, and paying the cost in an ejectment cause which had been pending between the parties; did not know whether the notes had been delivered to Davis or the cost paid, except that he heard the defendant Russell say one of the interest notes passed through his hands to Davis.

Plaintiff proved by A. McBride that in 1840, William Lambeth applied to him as Sheriff to put him in possession of the land in dispute; that he went with Lambeth, and Davis and Lambeth had some altercation in which Davis objected to Lambeth's having possession; that he and Lambeth went on said lot and he as Sheriff delivered possession to him so far as possession of an unimproved lot could be given.

Defendant proved that Davis continued the same possession and ownership over the lot that he had previously exercised until he removed from the county in 1844.

Defendant next tendered in evidence the record of a case in which the lot in dispute had been levied on under a *fi. fa.* against Davis, and a claim interposed by Usibious Slaton, which claim was tried and the property found subject to the execution, and under which it was sold and purchased by Russell; and proposed to prove that the present suit was commenced, and being prosecuted at the instance of Slaton and for his interest; and that on the trial of the claim case all the title papers of the plaintiff used in that trial were passed upon by the Court and Jury and the land fairly condemned as the land of Davis. All of which was rejected on the ground that it could not be given in evidence as a bar to an action of ejecment.

Defendant then proposed to read the depositions of a witness, which were taken and used on the trial of the claim case; the witness being dead. This evidence was rejected by the Court, as not having been taken in a case between the same parties.

Plaintiff read in evidence a deed from William Lambeth to Joseph Lambeth to an undivided half of said lot, and a deed from L. Glass as executor of Drury May to the other half.

The presiding Judge charged the jury, that the only question in the case was the statute of limitations. That the plaintiff was entitled to recover upon the grant from the State to McCarcel the drawer, unless title passed out of McCarcel, or his right was barred by lapse of time. That the Sheriff's deed

made before the grant issued did not pass a legal title to Davis, but only a color of title, and for that purpose alone it was admissible in evidence. That if Davis held the land under this color seven years, peaceably, uninterruptedly and adve rsely, claiming and using it as his own by such open and notorious acts as would be notice to others that he claimed and used it as his own, that would be such an adverse holding as is contemplated by law, and as will make the color a good legal title against McCarcel who failed to assert his right within seven years. But to give such effect to Davis' possession, it must have been uninterrupted. That if Davis abandoned the possession to May and Lambeth, that is such an interruption in his possession as would defeat his statutory title. That if he held in his own right from 1835 to 1840, and then held under May and Lambeth until 1844, it was such an interruption as would defeat his statutory title. And further that if Davis, after holding seven years and then voluntarily abandoned possession, it would destroy his statutory title, and it could not be set up to defeat McCarcel's right to recover.

Defendant's counsel requested the Court to charge the jury that if Davis held adversely for seven years under color of titile, he acquired such right and title as might be seized and sold by his creditors, though he may have abandoned the premises afterwards.

The Court refused to charge as requested, but charged, that if Davis abandoned the possession without an intention of returning, his statutory title would be destroyed, and that in this case it did not appear that there were any creditors of Davis at the time he abandoned the premises (provided he did abandon) who could have been affected by it.

To all of which rulings, charges and refusals to charge, defendant excepted.

The jury found for the plaintiff, and defendant tenders his bill of exceptions and alleges as error the rulings, charges and refusals to charge above excepted to.

M. M. TIDWELL, for plaintiff in error.

J. M. Calhoun, *contra*.

*By the Court.*—BENNING, J. delivering the opinion.

[1.] Was the Court right in refusing to require the Sheriff to execute a deed to John T. Davis? We think so, and for the reasons given by the Court.

Was the record of the claim case, admissible under the proof which the defendant proposed to make. The Court held, that it was not, and we cannot say, that, in this, the Court erred.

The title, according to the plaintiff's proof, was standing, at the time of this decision, in William B. Lambeth and Drury May, not in Slaton. It was not afterwards carried by the proof as far as Slaton, but only as far as Joseph Lambeth. Say, then, that William B. Lambeth and Drury May were, when the decision was made, to be considered as the real plaintiff's in the ejectment, were they bound by the judgment in the claim case? They were not parties to that case; nor were they privies, so far as appears. They therefore, were not bound by the judgment in that case. *Slaton* was the party in that case; and although it might be true, that they let him use their title in support of his claim, still, that did not make them bound by the judgment in the case. If Slaton had gained the case, they might have sued him on their title, their having let him thus use it, to the contrary notwithstanding. So, although it might be true, that Slaton was the party bringing the ejectment; and that he was bringing it for his own "interest," yet, that did not affect the validity of their title, or show that they were bound by the judgment in the claim case. Permitting Slaton to do this, was their business.

[2.] We think, that William B. Lambeth and Drury May were not bound by the judgment in the claim case, and therefore, that the judgment in that case, was not admissible against them.

Russell vs. Slaton.

If the defendant had carried the title, by proof, down to Slaton, and left it in him, then, the case would have been like that of *Dickerson vs. Powell* in 21 *Ga.* 143.

I remark for myself, in relation to this last case, that I have no remembrance of the fact, that a decision of the point, as to the admissibility of the judgment in the claim case, was made. I do remember well, that Mr. Lyon rested his "case on the other point, and expressed indifference as to this." And the ground taken by the lower Court in rejecting the judgment, was, that the judgment was a *nullity*, not that the case was an action of ejectment, and that in actions of ejectment, such a judgment, even if good, would not be admissible. I simply say, therefore, for myself, that I think this question ought still to be considered an open one.

### The Charges.

The charge, "that the Sheriff's sale made before the grant issued, did not pass a legal title to Davis, but only a color of title," is supported by the lessee of *Garlick vs. Robinson* (12 *Ga. R.*)

But even if this charge was wrong, (and I am disposed to think that it was,) the error is not one that would justify the granting of a new trial. Both parties really claimed under *Davis*, and the title which the plaintiff made out under him was a better one, than that made out under him, by the defendant. So that, the plaintiff is entitled to the verdict, even admitting, that Davis acquired Mr. Carcel's title.

For the same reason, the charge, "that the only question in the case, was the statute of limitation," is not such an error, if one at all, as to call for a new trial.

The charge, "that if Davis abandoned the possession to May and Lambeth, that is such an interruption in his possession as would defeat his statutory title" was manifestly right. If such was the case, the title would ripen, not, in Davis, but, in Lambeth and May.

[3.] The charge, "that if Davis, after holding seven years, then voluntarily abandoned possession, it would destroy his

statutory title," was also right, we think. If such was the case, the presumption would be, that he had never been holding adversely, but had all the time, been holding in subordination to the true title.

It was not proved, that there were any creditors of Davis at the time when he abandoned the land, if he did abandon it, therefore, *the request* was not justified by the facts.

Upon the whole, we are not prepared to say, that there ought to be a new trial.

<div align="right">

Judgment affirmed.